# EXHIBIT A

**BETTS, PATTERSON & MINES P.S.**
Christopher W. Tompkins (WSBA #11686)
CTompkins@bpmlaw.com
701 Pike Street, Suite 1400
Seattle, WA 98101-3927

**BLANK ROME LLP**
Henry F. Schuelke III (admitted *pro hac vice*)
HSchuelke@blankrome.com
600 New Hampshire Ave NW
Washington, DC 20037

James T. Smith (admitted *pro hac vice*)
Smith-jt@blankrome.com
Brian S. Paszamant (admitted *pro hac vice*)
Paszamant@blankrome.com
One Logan Square, 130 N. 18th Street
Philadelphia, PA 19103

Attorneys for Defendants Mitchell and Jessen

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON
## AT SPOKANE

|  |  |
|---|---|
| SULEIMAN ABDULLAH SALIM, MOHAMED AHMED BEN SOUD, OBAID ULLAH (as personal representative of GUL RAHMAN),<br><br>Plaintiffs,<br>vs.<br><br>JAMES ELMER MITCHELL and JOHN "BRUCE" JESSEN,<br><br>Defendants. | NO. 2:15-CV-286-JLQ<br><br>**AFFIDAVIT OF BRIAN S. PASZAMANT IN CONNECTION WITH SUBPOENAS FOR DEPOSITIONS OF GINA DOE AND JOHN/JANE DOE** |

## AFFIDAVIT OF BRIAN S. PASZAMANT

I, Brian S. Paszamant, hereby certify under penalty of perjury, that the following is true and correct and within my personal knowledge:

1.      I am over the age of 18, have personal knowledge of all facts contained in this affidavit and am competent to testify as a witness to those facts.

2.      I am an attorney admitted to practice in the Commonwealth of Pennsylvania and the State of New Jersey. I am a partner with the law firm of Blank Rome LLP.

3.      I am one of the attorneys representing Defendants, Dr. James Mitchell and Dr. John "Bruce" Jessen (collectively, the "Defendants") in connection with the above-captioned action. I have been admitted *pro hac vice* to the United States District Court for the Eastern District of Washington for the purpose of representing Defendants in this litigation.

4.      This action has been brought by three foreign nationals (the "Plaintiffs") who allege that they were detained by the United States government in connection with the United States' War on Terror in the aftermath of the September 11th attacks. Plaintiffs are seeking damages related to their alleged treatment in the Central Intelligence Agency's (the "CIA") former detention and interrogation program. Plaintiffs allege that Defendants worked as contractors for the CIA and, in that capacity, designed, implemented, and participated in the detention and interrogation program. Plaintiffs raise multiple claims for claimed violations of international law pursuant to the Alien Tort Statute and seek compensatory, punitive and exemplary damages.

5.      Neither the United States nor the CIA is a party to this action.

6.      While Defendants believe that this action is without merit, the action is proceeding through discovery. The United States has submitted a Statement of Interest, pursuant to 28 U.S.C. § 517, to advise the Court of the United States' interest in such discovery (the "Statement of Interest"). A copy of the Statement of Interest is attached hereto as **Exhibit 1**.

7.      The Statement of Interest specifically provides that "because the United States is not a party to this case, the first step to either party in this case seeking information from the United States is for the requesting litigant to submit a so-called *Touhy* (*United States ex. rel. Touhy v. Ragen*, 340 U.S. 462 (1951)) request under the relevant agencies' governing regulations, describing the information sought so that the agency can properly consider the request." Statement of Interest at 15.

8.      On May 23, 2016, the parties to the action and the United States jointly filed a "Joint Stipulation re: Discovery" in connection with the action (the "Joint Stipulation"). A copy of the Joint Stipulation is attached hereto as **Exhibit 2**.

9.      The Joint Stipulation—the product of extensive negotiations between the Parties and the United States—includes a brief factual and procedural background, outlines generally the subject matters of information potentially relevant to this action which remain classified or have been declassified, and establishes certain procedures to enable the United States to protect

information that it contends remain classified. *Id.* For instance, the Joint Stipulation recognizes the Parties' and the United States' acknowledgement that discovery in this action will focus on Defendants' roles and authority in designing, promoting and implementing the methods alleged in Plaintiffs' Complaint, as well as Plaintiffs' rendition, interrogation and alleged resulting injuries, *id.* ¶ 1, that a primary source of this information will be the United States, *id.* ¶ 6, and that discovery from the United States will be secured through so-called *Touhy* requests served upon counsel for the United States, Andrew Warden. *Id.*

10.    In an effort to defend themselves, Defendants have prepared subpoenas to depose the following individuals: (a) Gina Doe, former Chief of Staff to Jose Rodriguez when he served as the Chief of the CIA's Clandestine Service and former Deputy to Jose Rodriguez when he served as the Director of the CIA's Counterterrorism Center; and (b) John/Jane Doe, the former Chief of Special Missions for the CIA's Counterterrorism Center and immediate successor to Jim Cotsana in that position and who also served as the Chief of the CIA's Counterterrorism Center's Renditions Group. A copy of the subpoenas are attached hereto as **Exhibit 3**.

11.    The depositions that are requested pursuant to the enclosed subpoenas are critical to the defense of Plaintiffs' allegations because, among other things, it will enable Defendants to demonstrate the following:

    a.    Defendants' role in the CIA's detention and interrogation program, framework and implementation.

    b. That Defendants' actions/inactions were within the scope of legally and validly conferred authority.

    c. That even assuming, *arguendo*, that Defendants' actions/inactions somehow fell outside the scope of legally and validly conferred authority, their actions/inactions were nevertheless known to and approved by individuals possessing higher authority.

    d. That whatever improper actions/inactions, if any, were taken (or not taken) vis-à-vis one or more Plaintiffs is not capable of being attributable to Defendants' direct involvement.

    e. That Defendants were not present for any interrogation of two of the three Plaintiffs and had only minor involvement with regard to Gul Rahman, whose executor is the third Plaintiff.

    f. That Defendants' actions/inactions did not cause, directly or indirectly, Plaintiffs' alleged injuries.

12. I present this affidavit and the accompanying subpoenas in accordance with *Touhy*

and the regulations promulgated thereunder for submitting a request for information to the CIA,

32 CFR 1905.4, as well as pursuant to the procedure contemplated by the Joint Stipulation.

Brian S. Paszamant

STATE OF PENNSYLVANIA
COUNTY OF PHILADELPHIA

On __11/29/16__ before me, Brian S. Paszamant, personally appeared
_____, proved to me on the basis of satisfactory evidence to be the
person(s) whose name is subscribed to the within Affidavit and acknowledged to me that he/she
executed the same in his/her authorized capacity, and who, being first duly sworn on oath
according to law, deposes and says that he/she has read the foregoing Affidavit subscribed by
him/her, and that the matters stated herein are true to the best of his/her information, knowledge
and belief.

I certify under PENALTY OF PERJURY under the law of the Commonwealth of Pennsylvania that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____ (Notary Seal)

Signature of Notary Public

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
DREW KARLBERG, Notary Public
City of Philadelphia, Phila. County
My Commission Expires April 3, 2017

# EXHIBIT 1

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

MICHAEL C. ORMSBY
United States Attorney

TERRY M. HENRY
Assistant Branch Director

ANDREW I. WARDEN (IN Bar No. 23840-49)
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW
Washington, D.C. 20530
Tel: (202) 616-5084
Fax: (202) 616-8470
andrew.warden@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

SULEIMAN ABDULLAH SALIM, *et al.*,

                Plaintiffs,

        v.

JAMES E. MITCHELL and JOHN JESSEN,

                Defendants.

No. 2:15-CV-286-JLQ

STATEMENT OF INTEREST OF THE UNITED STATES

Motion Hearing:
April 22, 2016 at 9:00 a.m.
Spokane, Washington

UNITED STATES' STATEMENT OF INTEREST - 1

## INTRODUCTION

Pursuant to 28 U.S.C. § 517,[1] the United States of America submits this Statement of Interest to advise the Court of the United States' interest in the discovery issues presented in this case.

## BACKGROUND

This case involves an action brought by three former detainees seeking damages related to their alleged treatment in the Central Intelligence Agency's ("CIA") former detention and interrogation program. Neither the United States Government nor the CIA is a defendant in this case. Instead, Plaintiffs have brought this action against two individual psychologists, whom Plaintiffs allege worked as contractors for the CIA and, in that capacity, designed, implemented, and participated in the detention and interrogation program. *See* Complaint, ECF No. 1 at ¶¶ 1-4, 12-13. Plaintiffs

---

[1] Section 517 provides that the "Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States." 28 U.S.C. § 517. A submission by the United States pursuant to this provision does not constitute intervention under Rule 24 of the Federal Rules of Civil Procedure.

UNITED STATES' STATEMENT OF INTEREST - 2

raise multiple claims for violations of international law under the Alien Tort Statute and seek compensatory and punitive damages. *See id*. at ¶¶ 168-185.

On December 15, 2015, Plaintiffs and Defendants filed a joint motion to establish a briefing schedule for Defendants' motion to dismiss and to stay initial discovery pending a decision on Defendants' motion. *See* ECF No. 15. With respect to discovery in the case, Defendants represented that they believe discovery will be "complex and costly, likely involving issues relating to classified materials and state secrets." *Id*. at 2. Defendants also stated that they "anticipate seeking discovery involving classified information and documents in the possession of the CIA, other United States government agencies and/or foreign governments." *Id*. at 4. For their part, Plaintiffs stated that they "believe all the information required to adjudicate this matter is available on the public record and disagree that discovery of classified information and/or state secrets will be required." *Id*. at 5. Notwithstanding the parties' disagreement over the need for and scope of any discovery, which the parties acknowledged "will be disputed and require resolution through motion practice," the parties agreed to stay discovery during the pendency of the motion to dismiss. *Id*. at 4, 7.

On December 21, 2015, the Court granted the parties' motion to stay discovery. *See* Order Setting Briefing Schedule, ECF No. 22. In doing so, the Court noted that it would "revisit whether a stay of discovery is appropriate after the Motion to Dismiss is filed." *Id*. at 2-3.

UNITED STATES' STATEMENT OF INTEREST - 3

On March 2, 2016, the parties completed briefing on the motion to dismiss. *See* ECF Nos. 27-29. The next day, on March 3, 2016, the Court issued an order partially lifting the stay of discovery, concluding that "this matter should not be unduly delayed" during the pendency of the motion to dismiss. *See* Order Directing Filing of Discovery Plan and Proposed Schedule, ECF No. 30 at 1-2. The Court directed the parties to meet and confer on a joint discovery and scheduling plan by March 25, 2015, and then file a joint plan, or competing plans in the event of a disagreement, by April 8, 2016. *See id.* at 2. Among other things, the Court directed the parties to address the need for any "special procedures" that would govern discovery in the case. *Id.* The Court also scheduled a two-hour hearing on April 22, 2016, to address both the motion to dismiss and the proposed discovery plan and schedule. *See id.* In the meantime, the Court ordered that the "stay of discovery shall remain in effect as to written discovery and depositions." *Id.* However, the Court stated the "parties may begin exchange of initial disclosures pursuant to Rule 26(a)(1), but if the parties are still in agreement as to withholding such disclosures, they may withhold such disclosures pending the April 22, 2016 hearing." *Id.*

## **DISCUSSION**

The United States respectfully requests that that the Court consider the interests of the United States when formulating a discovery plan and schedule in this case. This case presents a complex situation in which Defendants likely have in their knowledge or possession information that is classified, or which could tend to reveal

UNITED STATES' STATEMENT OF INTEREST - 4

classified information, and that may be called for in discovery but which, as discussed

below, the Defendants are prohibited from disclosing, including in this litigation.

Discovery in this case will center around the CIA's former detention and

interrogation program, a covert action program authorized by the President of the

United States in 2001, as well as Defendants' role in that program.  Over time, certain

information about the detention and interrogation program has been officially

declassified by the United States and released to the public.  Most recently, on

December 9, 2014, the Senate Select Committee on Intelligence ("SSCI") publicly

released a redacted version of the Findings and Conclusions and Executive Summary

of the Committee's Study of the CIA's Detention and Interrogation Program

("Executive Summary"), at http://www.intelligence.senate.gov/press/committee-

releases-study-cias-detention-and-interrogation-program.  The President determined

that the Executive Summary should be declassified with the appropriate redactions

necessary to protect national security.  The Director of National Intelligence and the

CIA, in consultation with other Executive Branch agencies, conducted a

declassification review of the Executive Summary and transmitted a redacted,

unclassified version of it to the SSCI.  Public release of the Executive Summary by

the SSCI – along with a separate redacted report from minority committee members

and the CIA's response to the Executive Summary – had the effect of disclosing a

significant amount of information concerning the detention and interrogation program

that the Executive Branch had declassified.  For example, some general information

concerning the interrogation techniques and conditions of confinement applied to detainees in the detention and interrogation program, including Plaintiffs, is no longer classified.

Although certain categories of information about the detention and interrogation program have been declassified by the Executive Branch, other categories of information about the program remain classified and were redacted from the Executive Summary due to the damage to national security that reasonably could be expected to result from the disclosure of that information. *See* Executive Order 13526, Classified National Security Information, 75 Fed. Reg. 707 (Dec. 29, 2009). In connection with the ongoing military commission prosecution against the five former CIA detainees accused of committing the attacks on September 11, 2001, the Government has explained that these categories include, but are not limited to: names, identities, and physical descriptions of any persons involved with the capture, transfer, detention, or interrogation of detainees or specific dates regarding the same; the locations of detention sites (including the name of any country in which the detention site was allegedly located); any foreign intelligence service's involvement in the detainees' capture, transfer, detention, or interrogation; and information that would reveal details surrounding the capture of detainees other than the location and date. *See* Government's Mot. to Amend Protective Order, *United States v. Mohammed et al.*, Dkt No. AE 013RRR (U.S. Mil. Comm. Jan. 30, 2015), at www.mc.mil/Portals/0/pdfs/KSM2/KSM%20II%20(AE013RRR(Gov)).pdf

UNITED STATES' STATEMENT OF INTEREST - 6

The discovery requests in this case are likely to center on the operational details and internal workings of the detention and interrogation program.  While the United States possesses classified information about the program, this case also presents an additional complicating factor from a discovery perspective because Defendants, by virtue of their role as CIA contractors in the program, also likely have in their knowledge and possession information belonging to the United States that is classified, or which could tend to reveal classified information, that they are prohibited from disclosing.[2]  Defendants signed nondisclosure agreements with the United States that prohibit them from disclosing classified information without authorization from the United States.  *See Am. Foreign Serv. Ass'n v. Garfinkel*, 490 U.S. 153, 155 (1989) (per curiam) ("As a condition of obtaining access to classified information, employees in the Executive Branch are required to sign 'nondislosure agreements' that detail the employees' obligation of confidentiality and provide for penalties in the event of unauthorized disclosure.")*; Snepp v. United States*, 444 U.S. 507, 509 n.3 (1980) (per curiam) (stating that the CIA's non-disclosure agreement is an "entirely appropriate exercise of the CIA Director's statutory mandate to protect intelligence sources and methods from unauthorized disclosure") (internal quotations omitted).  Further, various federal regulations and laws prohibit unauthorized disclosure of classified information.  *See, e.g.*, 18 U.S.C. §§ 793-94; 18 U.S.C. § 798;

---

[2] The fact that Defendants served as CIA contractors in the detention and interrogation program is unclassified.

UNITED STATES' STATEMENT OF INTEREST - 7

50 U.S.C. § 3121; Executive Order 13526.  Nonetheless, this information could be the subject of discovery requests from Plaintiffs or otherwise may be called for pursuant to Fed. R. Civ. P. 26(a)(1)(A) (initial disclosures), or be relevant to certain defenses Defendants may affirmatively raise.  *See, e.g.*, Detainee Treatment Act of 2005, 10 U.S.C. § 801, stat. note § 1004 (establishing a defense in any civil action for Government agents engaged in interrogation or detention practices that were officially authorized and determined to be lawful at the time they were conducted).  Further, Defendants' view of whether the information they may have in their knowledge or possession is now declassified, following public release of the Executive Summary, may not be accurate or consistent with determinations made by the Executive Branch with regard to such information, and as a result, a risk exists that classified information could inadvertently be disclosed by Defendants in this litigation.

In the event discovery proceeds through this complicated landscape, including in the form of party discovery or disclosures from Defendants, important interests of the United States would be implicated.  The United States has a strong interest, of course, in protecting its classified, sensitive, or privileged information from disclosure.  *See* Fed. R. Civ. P. 45(d)(3)(A)(iii); *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 780 (9th Cir. 1994).  Indeed, the CIA has "sweeping" and "broad power to protect the secrecy and integrity of the intelligence process" in furtherance of the national security.  *CIA v. Sims*, 471 U.S. 159, 169-170 (1985); *see Berman v. CIA*, 501 F.3d 1136, 1140 (9th Cir. 2007); *see also* 50 U.S.C. § 3024(i)(1)

UNITED STATES' STATEMENT OF INTEREST - 8

("The Director of National Intelligence shall protect intelligence sources and methods from unauthorized disclosure."). Given the subject matter at issue in this case, the Government has a particularized interest in preventing unauthorized disclosures that would harm national security interests or compromise or impose undue burdens on intelligence and military operations. *See Dep't of Navy v. Egan*, 484 U.S. 518, 527, (1988) ("This Court has recognized the Government's 'compelling interest' in withholding national security information from unauthorized persons in the course of executive business.") (citing cases).

Further, any decision by the Government to consider the release of intelligence information requires careful scrutiny, sometimes by multiple Government agencies. This is especially so where the significance of one item of information frequently depends upon knowledge of other items of information, the value of which cannot be appropriately considered without knowledge of the entire landscape. As the Supreme Court explained in *Sims*, "what may seem trivial to the uninformed, may appear of great moment to one who has a broad view of the scene and may put the questioned item of information in its proper context." 471 U.S. at 178 (internal citations and quotations omitted). Accordingly, the process by which the Government evaluates and responds to requests for disclosure of information related to the detention and interrogation program is highly exacting and is essential in order to deny hostile adversaries the ability to piece together bits of information that may reveal

UNITED STATES' STATEMENT OF INTEREST - 9

information that remains classified. This process is certainly not typical for discovery in an ordinary civil matter.

In the event a party is dissatisfied with the Government's decisions regarding the disclosure of privileged or classified information and moves to compel access to or disclosure of such information, the Government would need sufficient time to consider whether invocation of privilege, including the state secrets privilege, would be appropriate to prevent the disclosure of the requested information. *See Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1077-84 (9th Cir. 2010) (en banc). The Supreme Court has long recognized the Government's ability to protect state secrets from disclosure in the context of civil discovery. *United States v. Reynolds*, 345 U.S. 1 (1953); *Gen. Dynamics Corp. v. United States*, 131 S. Ct. 1900 (2011). The privilege allows the Government to prevent the disclosure of national security information that would otherwise be discoverable in civil litigation, where there is a "reasonable danger that compulsion of the evidence will expose [state secrets] which, in the interest of national security, should not be divulged." *Reynolds*, 345 U.S. at 10.[3] Any decision concerning whether, when, or to what extent this privilege should

---

[3] The privilege, where it applies, is absolute and cannot be overcome by the perceived need of a litigant to access or use the information at issue. *See Kasza v. Browner*, 133 F.3d 1159, 1166 (9th Cir. 1998) ("Once the privilege is properly invoked, and the court is satisfied as to the danger of divulging state secrets, the privilege is

UNITED STATES' STATEMENT OF INTEREST - 10

be invoked in litigation in order to protect national security is no ordinary or simple occurrence; rather, it requires a searching review at the very highest levels of Government.

In addition to the judicial authority recognizing the significance of the state secrets privilege and the need for the Executive to invoke it with prudence, *Reynolds*, 345 U.S. at 7 (the state secrets privilege is "not to be lightly invoked"), the Executive Branch's own internal procedure provides for a rigorous, layered, and careful process for review of any potential state secrets privilege assertion, including personal approval from the head of the agency asserting the privilege as well as from the Attorney General. *See* Memorandum from the Attorney General to the Heads of Executive Departments and Agencies on Policies and Procedures Governing Invocation of the State Secrets Privilege (Sept. 23, 2009) ("State Secrets Guidance"), at http://www.justice.gov/opa/documents/state-secret-privileges.pdf; *see also Mohamed*, 614 F.3d at 1077, 1090 (citing Guidance). Under this process, the U.S. Department of Justice will defend an assertion of the state secrets privilege in litigation only when "necessary to protect against the risk of significant harm to national security." *See* State Secrets Guidance at 1. The Attorney General also has established detailed procedures for review of a proposed assertion of the state secrets privilege in a civil case. Those procedures require submissions by the relevant

absolute[.]"). Rather, when the privilege is successfully invoked, the evidence subject to the privilege is "completely removed from the case." *Id*.

UNITED STATES' STATEMENT OF INTEREST - 11

government departments or agencies specifying "(i) the nature of the information that must be protected from unauthorized disclosure; (ii) the significant harm to national security that disclosure can reasonably be expected to cause; [and] (iii) the reason why unauthorized disclosure is reasonably likely to cause such harm." *Id.* at 2. The Department of Justice will only defend an assertion of the privilege in court with the personal approval of the Attorney General following review and recommendations from a committee of senior Department of Justice officials. *Id*. at 3. The Court of Appeals has emphasized the importance of this guidance. *See Mohamed*, 614 F.3d at 1080 ("Although *Reynolds* does not require review and approval by the Attorney General when a different agency head has control of the matter, such additional review by the executive branch's chief lawyer is appropriate and to be encouraged."). Given the highly significant determinations that must be made in deciding whether to assert the state secrets privilege, the Government has a strong interest in ensuring that adequate time is provided so that senior Executive Branch officials can carefully consider whether the privilege should be asserted without rushing to a hasty or inaccurate decision.

In light of these unique circumstances, this case is likely to require special procedures to protect against the disclosure of classified or privileged information belonging to the United States during party discovery, and for litigating any disputes over whether such information may be disclosed. Consequently, the United States recommends that any discovery plan entered in this case include certain special

procedures that would enable the Government to have the opportunity to review any proposed disclosure of information by Defendants during party discovery for classified or privileged information and, if necessary, to take steps to protect against disclosure. Absent such procedures, there exists a risk of unauthorized disclosure of the United States' classified or privileged information.[4]

    In an effort to reach consensus on this issue, undersigned counsel for the United States has initiated discussions with the attorneys for both Plaintiffs and Defendants regarding proposed protective measures for inclusion in the discovery plan. Among the protective measures under consideration and discussion are identifying those subject areas related to the detention and interrogation program that have been declassified and those that have not, thereby enabling the parties to tailor the litigation and discovery in this case, if appropriate, to information that has been declassified and would not implicate the United States' national security interests; permitting attorneys from the Department of Justice to attend depositions and assert objections where

---

[4] In describing these special procedures the United States does not waive any privileges, arguments, or defenses that it may assert to prevent disclosure of privileged information. Rather, the goal of these procedures is to provide a mechanism for the United States to assert any appropriate objections to prevent the unauthorized disclosure of privileged information and to streamline, or make as efficient as possible, any contested litigation over access to such information.

UNITED STATES' STATEMENT OF INTEREST - 13

appropriate to prevent improper disclosures; and permitting the United States to review any anticipated discovery disclosures by Defendants related to the detention and interrogation program in order to guard against the unauthorized disclosure of classified information.  At this point in the discussions, the Government is optimistic that an agreement can be reached on at least some, though perhaps not all, of the Government's proposed procedures.  Consequently, the Government respectfully requests that the Court permit the Government to continue to work with the parties to reach consensus on these special procedures prior to the Court establishing a discovery plan in this case.  In order to be of assistance to the Court, undersigned counsel for the United States intends to attend the upcoming hearing set for April 22 to address this matter and any questions the Court may have of the Government.  In the event the parties and the Government cannot reach agreement on certain procedures, the Government will be prepared to discuss options to promote the efficiency of any contested litigation over classified or privileged Government information in party discovery to which the Government may object to disclosure.

In addition to party discovery, this case is also likely to involve a substantial volume of third-party discovery requests directed to the CIA and perhaps other United States agencies related to the detention and interrogation program.[5]  At this initial

_____

[5] The foreword to Executive Summary states that Senate committee staffers reviewed over 6 million pages of CIA documents during a nearly four-year period while

UNITED STATES' STATEMENT OF INTEREST - 14

stage of proceedings, when the Government has not yet been served with any

discovery requests, and no contested litigation is imminent, the Government does not

know precisely how the discovery process against the United States will unfold,

although each of the various interests discussed above would be implicated in such

discovery.  Where it is not a party to a suit, the United States has a strong interest in

avoiding the unreasonable diversion of the Government's national security resources

to satisfy the discovery demands of the parties.  *See Exxon Shipping Co.*, 34 F.3d at

779 ("We acknowledge the government's serious and legitimate concern that its

employee resources not be commandeered into service by private litigants to the

detriment of the smooth functioning of government operations.").  In all events, the

Government has a significant interest in ensuring that any third-party discovery

proceeds in an efficient manner without the litigation itself imposing undue burdens

on any agency carrying out a national security mission.  To that end, because the

United States is not a party to this case, the first step to either party in this case

seeking information from the United States is for the requesting litigant to submit a

so-called *Touhy* (*United States ex. rel. Touhy v. Ragen*, 340 U.S. 462 (1951)) request

under the relevant agencies' governing regulations, describing the information sought

so that the agency can properly consider the request.  *See*, *e.g.*, 32 C.F.R. § 1905.4(c)-

(d) (CIA)*; see also In re Boeh*, 25 F.3d 761, 763-64 (9th Cir. 1994); *Exxon Shipping*

compiling their report about the detention and interrogation program.  *See* Executive

Summary Foreword at 4.

UNITED STATES' STATEMENT OF INTEREST - 15

1  *Co.*, 34 F.3d at 780 n. 11 ("Because [5 U.S.C.] § 301 provides authority for agency

2  heads to issue rules of procedure in dealing with requests for information and

3  testimony, an agency head will still be making the decisions on whether to comply

4  with such requests in the first instance [prior to court review].").  As explained above,

5  given the potential volume and complex nature of the information that is likely to be

6  sought in this case, the Government likely will need a substantial amount of time to

7  identify any responsive information and then determine whether and to what extent

8

9  that information can be provided or whether it must object to disclosure and, if

10  necessary, assert privilege in response to a demand for the information.  In the event a

11

12  decision is made to produce responsive material, the production process is likely to

13  require additional time because the intelligence information at issue here would be

14  required to undergo a careful review, perhaps by multiple agencies, to ensure only

15

16  unclassified and non-privileged information is released.

17

18          Finally, given the Government's compelling interest in protecting classified and

19  other sensitive or privileged information from unauthorized disclosure, the

20

21  Government opposes any suggestion to create special procedures that would permit

22  the parties or their counsel to access classified information, such as by granting private

23  attorneys security clearances and establishing secure facilities for the exchange,

24

25  storage, and review of classified information by the parties.  As the Court of Appeals

26  has recognized, "[t]he decision to grant or revoke a security clearance is committed to

27  the discretion of the President by law." *Dorfmont v. Brown*, 913 F.2d 1399, 1401 (9th

28

UNITED STATES' STATEMENT OF INTEREST - 16

Cir. 1990). There is no statutory authority that would permit or require such access in this context. For example, the Classified Information Procedures Act, 18 U.S.C. app. 3 ("CIPA"), is inapplicable in civil cases. *See* CIPA, Pub. L. No. 96-456, 94 Stat. 2025 (1980) ("An act to provide certain pretrial, trial and appellate procedures for criminal cases involving classified information."); *see also id*. § 3 ("Upon motion of the United States, the court shall issue an order to protect against the disclosure of any classified information disclosed by the United States to any defendant in any criminal case in a district court of the United States."). Indeed, the application of CIPA to civil litigation would be an impermissible construction of that statute, distorting both its language and legislative rationale and ignoring the distinction between criminal and civil litigation. Unlike criminal prosecutions, where a prosecutor can choose to cease prosecution rather than disclose classified information to a criminal defendant, in civil litigation like this when a litigant seeks classified information, the Government has no ultimate control over the continuation of the case. *See Reynolds*, 345 U.S. at 12. Accordingly, it would be inappropriate in this case to attempt to devise CIPA-like procedures that would require the Government to provide private parties with access to classified or otherwise protected national security information in the context of a civil damages action, particularly one in which the Government is not a party. *See Mohamed*, 614 F.3d at 1089 (upholding privilege assertion over classified information "no matter what protective procedures the district court might employ"); *Al-Haramain Islamic Found., Inc. v. Bush*, 507 F.3d 1190, 1204 (9th Cir. 2007) (holding that the

UNITED STATES' STATEMENT OF INTEREST - 17

district court erred in crafting procedures that attempted to "thread the needle" to enable a private party to use classified information in a civil action where a valid privilege assertion by the Government had been upheld); *Sterling*, 416 F.3d at 348 (rejecting request for "special procedures" to allow party access to classified information, noting that "[s]uch procedures, whatever they might be, still entail considerable risk" of "leaked information" and "inadvertent disclosure" that would place "covert agents and intelligence sources alike at grave personal risk").

## **CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court consider the interests of the United States as it formulates the discovery plan in this case.

Dated:  April 8, 2016                    Respectfully submitted,

                                         BENJAMIN C. MIZER
                                         Principal Deputy Assistant Attorney General

                                         MICHAEL C. ORMSBY
                                         United States Attorney

                                         TERRY M. HENRY
                                         Assistant Branch Director

                                         *s/ Andrew I. Warden*
                                         ANDREW I. WARDEN
                                         Indiana Bar No. 23840-49
                                         Senior Trial Counsel
                                         United States Department of Justice

Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW
Washington, D.C. 20530
Tel: (202) 616-5084
Fax: (202) 616-8470
andrew.warden@usdoj.gov

Attorneys for the United States of America

UNITED STATES' STATEMENT OF INTEREST - 19

**CERTIFICATE OF SERVICE**

I hereby certify that on April 8, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Dror Ladin:  
Dladin@aclu.Org

Hina Shamsi:  
Hshamsi@aclu.Org

Jameel Jaffer:  
Jjaffer@aclu.Org

La Rond Baker:  
Lbaker@aclu-Wa.Org

Paul L Hoffman:  
Hoffpaul@aol.Com

Steven Watt:  
Swatt@aclu.Org

*Attorneys for Plaintiffs*

Brian Paszamant:  
Paszamant@blankrome.Com

Henry Schuelke, III:  
Hschuelke@blankrome.Com

James Smith:  
Smith-Jt@blankrome.Com

Christopher Tompkins:  
Ctompkins@bpmlaw.Com

*Attorneys for Defendants*

/s/ Andrew I. Warden
ANDREW I. WARDEN
Indiana Bar No. 23840-49
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20530
Tel: (202) 616-5084
Fax: (202) 616-8470
Attorney for the United States of America

UNITED STATES' STATEMENT OF INTEREST - 20

# EXHIBIT 2

1

**The Honorable Justin L. Quackenbush**

2   Christopher W. Tompkins, WSBA #11686
   **Betts Patterson & Mines, P.S.**

3   One Convention Place, Suite 1400

4   701 Pike Street
   Seattle, Washington  98101-3927

5   Telephone:  206-292-9988

6

7   **BLANK ROME LLP**
   Henry F. Schuelke III (admitted *pro hac vice*)

8   HSchuelke@blankrome.com
   600 New Hampshire Ave NW

9   Washington, DC 20037

10

11   James T. Smith (admitted *pro hac vice*)
   Smith-jt@blankrome.com

12   Brian S. Paszamant (admitted *pro hac vice*)
   Paszamant@blankrome.com

13   One Logan Square, 130 N. 18th Street

14   Philadelphia, PA 19103Attorneys for
   Defendants Mitchell and Jessen

15

16   UNITED STATES DISTRICT COURT
   FOR THE EASTERN DISTRICT OF WASHINGTON

17   AT SPOKANE

18

19   SULEIMAN ABDULLAH SALIM,          NO. 2:15-CV-286-JLQ
   MOHAMED AHMED BEN SOUD,

20   OBAID ULLAH (as personal          STIPULATION RE DISCOVERY
   representative of GUL RAHMAN),

21            Plaintiffs,

22        vs.

23   JAMES ELMER MITCHELL and

24   JOHN "BRUCE" JESSEN,

25            Defendants.

STIPULATION RE DISCOVERY                    - 1 -
NO. 2:15-CV-286-JLQ

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-9988
(206) 292-9988

1049605/052316 1523/8360-0001

The Court has ordered the parties to propose a plan "concerning both the procedure for discovery and scope." ECF No. 40 at 18. In response to that order, Plaintiffs Suleiman Abdullah Salim, Mohamed Ahmed Ben Soud, and Obaid Ullah (as personal representative of Gul Rahman) ("Plaintiffs"), Defendants James Elmer Mitchell and John "Bruce" Jessen ("Defendants"), and the United States (collectively "the Parties"), through their respective counsel of record, stipulate:

**Procedural Background**

1.      This case involves allegations of torture and abuse by three former detainees in the Central Intelligence Agency's ("CIA") former detention and interrogation program. The plaintiffs allege that the two defendants in the case (James Mitchell and John "Bruce" Jessen) were contractors for the CIA and, in that capacity, designed, implemented, and participated in the detention and interrogation program.

2.      The United States has filed a Statement of Interest with respect to its interest in the potential for disclosure of information which implicates privileged or classified information or may otherwise impact national security.

3.      Defendants moved to dismiss Plaintiffs' complaint *inter alia* for lack of subject-matter jurisdiction based on the political question doctrine and for derivative sovereign immunity ("Defendants' Motion"). Defendants' Motion was argued on April 22, 2016.

4.      The Court denied Defendants' Motion. The Court instructed the Parties to propose a plan "concerning both the procedure for discovery and scope" by May 23, 2016. ECF No. 40 at 18–19.

STIPULATION RE DISCOVERY
NO. 2:15-CV-286-JLQ

- 2 -

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

1049605/052316 1523/8360-0001

**Discovery**

5.     Discovery shall focus on (1) the roles of Defendants and others in designing, promoting, and implementing the methods alleged in the Complaint, as related to Plaintiffs, including whether Defendants "merely acted at the direction of the Government, within the scope of their authority, and that such authority was legally and validly conferred," ECF No. 40 at 14; and (2) Plaintiffs' detention, rendition, interrogation and alleged resulting injuries.

6.     A primary source for this Discovery will be the United States.  Such information shall be requested from the United States through *Touhy* (*United States ex rel. Touhy v. Ragen,* 340 U.S. 462 (1951)) requests or such other procedure as the Parties may agree.  *Touhy* requests directed to the Central Intelligence Agency and Department of Justice shall be served on counsel for the United States, who will communicate the requests to the appropriate agency contacts.  In the event a party intends to submit a *Touhy* request to an agency of the United States other than the Central Intelligence Agency or Department of Justice, the party shall notify counsel for the United States, who will confer with the agency and inform the requesting party whether counsel for the United States will accept service on behalf of the agency.  Upon request from a party, counsel for the United States will confer with the appropriate agency contacts and provide the requesting party with information regarding the status of any pending *Touhy* requests.

**Classified Information and National Security**

7.     The United States asserts that Defendants possess information which is considered classified by the United States.  In addition, the United States asserts that Defendants are subject to non-disclosure agreements related to their

STIPULATION RE DISCOVERY
NO. 2:15-CV-286-JLQ

- 3 -

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

1049605/052316 1523/8360-0001

consulting work in connection with the former detention and interrogation program. Defendants assert that they must be able to share all information and fully confer with their counsel about their consulting work in connection with the former detention and interrogation program, including all aspects of their involvement and participation, and have a Constitutional right to do so.

8.     Defendants assert that the United States must take action necessary to permit Defendants to share all information and fully confer with their counsel about their consulting work in connection with the former detention and interrogation program, which may include providing security clearances to Defendants' counsel or other actions which will enable Defendants to confer fully with their counsel.   The United States has provided Defendants with classification guidance regarding the categories of information Defendants may share with their attorneys consistent with Defendants' non-disclosure agreements. The guidance explains, among other things, the categories of unclassified information concerning the CIA's former detention and interrogation program that Defendants may share with their attorneys.  One of Defendants' attorneys has previously been granted a Top Secret security clearance to assist the Defendants in other matters, and the United States will consider requests by Defendants' attorneys for additional security clearances upon request, including an explanation why additional attorneys require security clearances and access to classified information.

9.     The United States asserts that, although various categories of information related to the former detention and interrogation program have been declassified, other categories of information or documents that may or may not be relevant to the claims and defenses of the parties to this litigation are currently and

STIPULATION RE DISCOVERY
NO. 2:15-CV-286-JLQ

- 4 -

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

1049605/052316 1523/8360-0001

properly classified pursuant to Executive Order 13526, Classified National Security Information, 75 Fed. Reg. 707 (Dec. 29, 2009), and otherwise protected from disclosure.  The United States further asserts that the disclosure of such information or documents reasonably could be expected to cause serious and in some cases exceptionally grave damage to the national security of the United States.  The United States therefore reserves its right to object or to seek appropriate protections to prevent the disclosure of such information in the event it is sought by Plaintiff or Defendants in this case.

10.    The following is a list of categories of information that the United States asserts is classified national security information related to the former detention and interrogation program, and therefore may not be the subject of discovery in this matter:

a.  Identities of current or former CIA employees or contractors involved in the detention and interrogation program (*e.g.*, names, pseudonyms, physical descriptions, or other identifying information), with the exception of any current or former CIA employee or contractor whom the United States has officially acknowledged as associated with the detention and interrogation program.

b.  The locations of CIA Stations and Bases, including facilities or detention sites used by the CIA as part of the detention and interrogation program, including the name of any country or city in which the detention site was located or information about the operation of the facility that would tend to reveal its location.

c.  Identities of any foreign intelligence service, including its personnel or agents, involved in the detention and interrogation program or the

STIPULATION RE DISCOVERY
NO. 2:15-CV-286-JLQ

- 5 -

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

capture, rendition, detention, or interrogation of detainees in the detention and interrogation program.

d. Identities of human intelligence sources who assisted the CIA in executing or administering the detention and interrogation program (*e.g.,* names, pseudonyms, physical descriptions, or other identifying information).

e. The content and source of information provided to detainees in the detention and interrogation program during the course of interrogations, debriefings, and interviews.

f. Names, code words, or other identifiers used in the detention and interrogation program to refer to individuals, detainees, CIA stations or bases, or CIA detention facilities.

g. Information regarding the questions posed to detainees in CIA or foreign liaison debriefing or interrogation sessions and the answers the detainees provided, including the intelligence requirements or gaps that the CIA or foreign liaison services sought to fill by questioning the detainees.

h. Information regarding the capture of detainees in the detention and interrogation program, including any involvement by a foreign liaison services.

i. Information regarding the transfer or rendition of a detainee to the extent that information would reveal a foreign liaison service's involvement in the operation or the location of the operation, including the length of any trips and the arrival, departure, layover, and final destination locations involved in the transfer.

STIPULATION RE DISCOVERY
NO. 2:15-CV-286-JLQ

- 6 -

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

1049605/052316 1523/8360-0001

j. Dissemination-control information, including routing and administrative information, contained within documents that the CIA uses to track and control information.

k. Information regarding the nature of any alleged classified work performed by defendants as part of non-detention and interrogation related contracts with the CIA.

11.     The United States acknowledges that the following categories of detention and interrogation program information are not classified and may be the subject of discovery, subject to appropriate objection:

a. The fact that the detention and interrogation program was a covert action program authorized by the President of the United States, and that the detention and interrogation program was authorized by a Memorandum of Notification issued by the President on September 17, 2001.

b. The names and descriptions of authorized enhanced interrogation techniques that were used in connection with the detention and interrogation program, and the specified parameters within which the interrogation techniques could be applied.

c. The authorized enhanced interrogation techniques as applied to the 119 individuals, including Plaintiffs, as described in Appendix 2 of the Executive Summary officially acknowledged to have been in CIA custody.

d. Information regarding the conditions of confinement as applied to the 119 individuals, including Plaintiffs, mentioned in

STIPULATION RE DISCOVERY
NO. 2:15-CV-286-JLQ

- 7 -

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

1049605/052316 1523/8360-0001

Appendix 2 of the Executive Summary officially acknowledged to have been in CIA custody.

e. Information regarding the treatment of the 119 individuals, including Plaintiffs, mentioned in Appendix 2 of the Executive Summary officially acknowledged to have been in CIA custody, including the application of authorized enhanced interrogation techniques on the individuals.

f. Information regarding the conditions of confinement or treatment during the transfer or rendition of the 119 individuals, including Plaintiffs, mentioned in Appendix of the Executive Summary officially acknowledged to have been in CIA custody.

g. Allegations of torture, abuse, or mistreatment by the 119 individuals, including Plaintiffs, mentioned in Appendix 2 of the Executive Summary officially acknowledged to have been in CIA custody.

12. Defendants recognize the national security concerns and non-disclosure concerns expressed by the United States, and agree to explore ways in which information relevant to the claims or defenses asserted can be provided subject to the limitations expressed by the United States, including redaction of documents, the use of pseudonyms, or other methods. However, Defendants reserve the right to seek production of documents and information which the United States asserts are classified or subject to Defendants' non-disclosure agreements should Defendants and the United States not be able to reach agreement on ways in which discoverable information can be provided subject to the limitations expressed by the United States. The United States reserves its

STIPULATION RE DISCOVERY
NO. 2:15-CV-286-JLQ

- 8 -

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

1049605/052316 1523/8360-0001

right to object or to seek appropriate protections to prevent the disclosure of classified, protected, or privileged information, or information subject to Defendants' non-disclosure agreements, in the event it is sought by Plaintiffs or Defendants in this case.

13.     Plaintiffs assert that this litigation may proceed without the categories of information identified by the government in paragraph 10, none of which, Plaintiffs assert, is necessary to resolution of this lawsuit.  Plaintiffs do not agree with the United States that all such information is properly classified. Plaintiffs specifically disagree that their own thoughts, memories, and experiences, which arise from their personal and involuntary subjection to the CIA's detention and interrogation program, may be lawfully classified or suppressed.  Because Plaintiffs assert the categories of information identified by the government in paragraph 10 are unnecessary to this litigation, Plaintiffs agree to the government's restriction on using or seeking those categories of information as part of this lawsuit.  Should Plaintiffs' assessment of the need in this litigation for information identified in paragraph 10 change, Plaintiffs will seek modification of this stipulation in accordance with the procedures set forth in paragraph 18.

14.     Plaintiffs and Defendants agree to serve the United States with a copy of all notices of deposition and to inform the attorneys for the United States regarding the scheduling of any depositions.  Attorneys for the United States and representatives from appropriate Government agencies may attend all depositions and proceedings in this case and may make objections they deem necessary to prevent the unauthorized disclosure of privileged or classified information.  If an attorney for the United States asserts an

STIPULATION RE DISCOVERY
NO. 2:15-CV-286-JLQ

- 9 -

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

1049605/052316 1523/8360-0001

objection to prevent the disclosure of classified, protected, or privileged information, or information subject to Defendants' non-closure agreements, the witness shall be precluded from responding to any question to which objection is made pending further order of the Court.

15. In the event the United States asserts an objection during a deposition or proceeding based on privilege or classification that precludes a witness from responding to a question, the United States and the party requesting the information shall meet and confer after the deposition or proceeding to discuss whether the requesting party intends to pursue access to the information and, if so, whether the information can be provided in an alternative form that would resolve the United States' privilege or classification objection. In the event the United States and requesting party are unable to reach an agreement on providing the requested information in an alternative form, the proper procedural vehicle for the requesting party to seek judicial relief is a motion to compel pursuant to Federal Rule of Civil Procedure 37.

16. Defendants acknowledge that they possess information which the United States contends is classified and/or subject to non-disclosure agreements with the CIA. If Defendants intend to file any pleading or serve any discovery response which contains information they reasonably believe the United States would contend is classified and/or subject to a non-disclosure obligation, Defendants shall provide the pleading or discovery response to the United States for review prior to service or filing. Defendants' disclosure of information to the United States pursuant to this review procedure shall not be deemed to waive any claim Defendants may have that the information submitted is subject to the work product protection or

STIPULATION RE DISCOVERY
NO. 2:15-CV-286-JLQ

- 10 -

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

1049605/052316 1523/8360-0001

attorney-client privilege, or estop Defendants from designating the information submitted as subject to the work product protection or attorney-client privilege at a later date.  The United States agrees to review the information submitted by Defendants in a reasonable period of time, recognizing that the time required for review will vary depending a variety of factors, including the volume and complexity of the information submitted as well as any upcoming litigation deadlines.  In the event the United States has not completed its review within ten (10) business days, the United States shall provide Defendants with an estimated time for completion.

17.    In the event information submitted by the Defendants to the United States for review is necessary for a filing or discovery response imposed by this Court or the Federal Rules of Civil Procedure, and such information is undergoing review by the United States at the time Defendants' filing or discovery response is due, Defendants' filing or discovery obligation shall be tolled during the period of time while the United States reviews Defendants' submission.

18.    Any Party may seek modification of any aspect of this Stipulation by agreement of all parties, or, failing agreement, by motion to the Court.

STIPULATION RE DISCOVERY
NO. 2:15-CV-286-JLQ

- 11 -

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

1049605/052316 1523/8360-0001

DATED this 23rd day of May, 2016.

| | |
|---|---|
| ACLU OF WASHINGTON FOUNDATION | BETTS, PATTERSON & MINES P.S. |
| By ___s/ LaRond Baker___ | By ___/s Christopher W. Tompkins___ |
| LaRond Baker, WSBA #43610 | Christopher W. Tompkins, WSBA #11686 |
| lbaker@aclu-wa.org | Betts, Patterson & Mines, P.S. |
| 901 Fifth Ave, Suite 630 | One Convention Place, Suite 1400 |
| Seattle WA 98164 | 701 Pike Street |
| | Seattle WA 98101-3927 |
| Steven M. Watt, admitted *pro hac vice* | Telephone: (206) 292-9988 |
| swatt@aclu.org | Facsimile: (206) 343-7053 |
| Dror Ladin, admitted *pro hac vice* | E-mail: ctompkins@bpmlaw.com |
| dladin@aclu.org | |
| Hina Shamsi, admitted *pro hac vice* | Henry F. Schuelke III, *pro hac vice* |
| hshamsi@aclu.org | hschuelke@blankrome.com |
| Jameel Jaffer, admitted *pro hac vice* | Blank Rome LLP |
| jjaffer@aclu.org | 600 New Hampshire Ave NW |
| ACLU Foundation | Washington, DC 20037 |
| 125 Broad Street, 18th Floor | |
| New York, NY 10007 | James T. Smith, *pro hac vice* |
| | smith-jt@blankrome.com |
| Paul Hoffman | Brian S. Paszamant, *pro hac vice* |
| hoffpaul@aol.com | paszamant@blankrome.com |
| Schonbrun Seplow Harris & Hoffman, LLP | Blank Rome LLP |
| 723 Ocean Front Walk, Suite 100 | 130 N 18th Street |
| Venice, CA 90291 | Philadelphia, PA 19103 |
| | |
| Attorneys for Plaintiffs | Attorneys for Defendants Mitchell and Jessen |

STIPULATION RE DISCOVERY
NO. 2:15-CV-286-JLQ

- 12 -

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

1049605/052316 1523/8360-0001

1

2   BENJAMIN C. MIZER
    Principal Deputy Assistant Attorney
3   General

4   MICHAEL C. ORMSBY
    United States Attorney
5

6   TERRY M. HENRY
    Assistant Branch Director
7

8

9   *s/ Andrew I. Warden*
    ANDREW I. WARDEN
10  Indiana Bar No. 23840-49
    Senior Trial Counsel
11  United States Department of Justice
    Civil Division, Federal Programs
12  Branch
    20 Massachusetts Avenue NW
13  Washington, D.C. 20530
    Tel: (202) 616-5084
14  Fax: (202) 616-8470
    andrew.warden@usdoj.gov
15

16

17  Attorneys for the United States of
    America
18

19

20

21

22

23

24

25

STIPULATION RE DISCOVERY          - 13 -
NO. 2:15-CV-286-JLQ

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

1049605/052316 1523/8360-0001

# CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of May, 2016, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Steven M. Watt, admitted *pro hac vice*
swatt@aclu.org
Dror Ladin, admitted *pro hac vice*
dladin@aclu.org
Hina Shamsi, admitted *pro hac vice*
hshamsi@aclu.org
Jameel Jaffer, admitted *pro hac vice*
jjaffer@aclu.org
ACLU Foundation
125 Broad Street, 18th Floor
New York, NY  10007

LaRond Baker
lbaker@aclu-wa.org
ACLU of Washington Foundation
901 Fifth Ave, Suite 630
Seattle, WA  98164

Andrew L. Warden
andrew.warden@usdoj.gov
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs
Branch
20 Massachusetts Ave NW
Washington, DC  20530

Paul Hoffman
hoffpaul@aol.com
Schonbrun Seplow Harris & Hoffman,
LLP
723 Ocean Front Walk, Suite 100
Venice, CA  90291

By    *s/ Karen Pritchard*
Karen Pritchard

STIPULATION RE DISCOVERY
NO. 2:15-CV-286-JLQ

- 14 -

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

1049605/052316 1523/8360-0001

# EXHIBIT 3

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Eastern District of Washington

| | | |
|---|---|---|
| Suleiman Abdulah Salim, et. al. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. 2:15-CV-286-JLQ |
| James Elmer Mitchell and John "Bruce" Jessen | ) | |
| *Defendant* | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:    Gina Doe, former Chief of Staff to Jose Rodriguez when he served as the Chief of the CIA's Clandestine Service and former Deputy to Jose Rodriguez when he served as the Director of the CIA's Counterterrorism Center

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: Blank Rome LLP<br>1825 Eye Street, NW<br>Washington, D.C. 20006 | Date and Time:<br>01/04/2017 10:00 am |
|---|---|

The deposition will be recorded by this method:    Reporter

☐ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    11/30/2016

|  |  |
|---|---|
| *CLERK OF COURT* | OR |
| _____<br>*Signature of Clerk or Deputy Clerk* | _____<br>*Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Defendants
James Elmer Mitchell and John "Bruce" Jessen _____ , who issues or requests this subpoena, are:

Brian Paszamant, 1 Logan Square, 130 North 18th Street, Philadelphia, PA 19103-6998. Tel: (215) 569-5791. Email:
Paszamant@Blankrome.com

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 2:15-CV-286-JLQ

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____
on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i) is a party or a party's officer; or
    (ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
  (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
  (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

  (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    (i) fails to allow a reasonable time to comply;
    (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv) subjects a person to undue burden.
  (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    (i) disclosing a trade secret or other confidential research, development, or commercial information; or
    (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

  (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
  (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i) expressly make the claim; and
    (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Eastern District of Washington

| | |
|---|---|
| Suleiman Abdulah Salim, et. al. | ) |
| _Plaintiff_ | ) |
| v. | ) |
| James Elmer Mitchell and John "Bruce" Jessen | ) |
| | ) |
| _Defendant_ | ) |

Civil Action No.   2:15-CV-286-JLQ

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:   John/Jane Doe,  former Chief of Special Missions for the CIA's CTC and immediate successor to Jim Cotsana in
that position and who also served as the Chief of the CIA's CTC Renditions Group

_(Name of person to whom this subpoena is directed)_

☑ _Testimony:_  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a
deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors,
or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or
those set forth in an attachment:

| Place: | Blank Rome LLP<br>1825 Eye Street, NW<br>Washington, D.C. 20006 | Date and Time:<br>01/05/2017 10:00 am |
|---|---|---|

The deposition will be recorded by this method:   Reporter

❏ _Production:_ You, or your representatives, must also bring with you to the deposition the following documents,
electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the
material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance;
Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to
respond to this subpoena and the potential consequences of not doing so.

Date:   11/30/2016

_CLERK OF COURT_

OR   _____   /ASG

_Signature of Clerk or Deputy Clerk_                    _Attorney's signature_

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_   Defendants
James Elmer Mitchell and John "Bruce" Jessen   _____ , who issues or requests this subpoena, are:

Brian Paszamant, 1 Logan Square, 130 North 18th Street, Philadelphia, PA 19103-6998. Tel: (215) 569-5791. Email:
Paszamant@Blankrome.com

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before
trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to
whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  2:15-CV-286-JLQ

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named individual as follows: _____

_____

on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

### (c) Place of Compliance.

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

### (d) Protecting a Person Subject to a Subpoena; Enforcement.

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

### (e) Duties in Responding to a Subpoena.

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

### (g) Contempt.
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).